UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
(HOUSTON DIVISION)

**ASHBURTON INTERNATIONAL SUPPLY S.L.,**

      **Plaintiff,**

vs.

**PETROLEOS DE VENEZUELA, S.A., PDVSA SERVICES, INC., and BARIVEN, S.A.,**

      **Defendants.**

                                          /

**CASE NO. 4:20-CV-02426**

## PLAINTIFF, ASHBURTON INTERNATIONAL SUPPLY S.L. REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO REOPEN ADMINISTRATIVELY CLOSED CASE BASED ON SIGNIFICANT CHANGE IN CIRCUMSTANCES

**COMES NOW**, Plaintiff, **ASHBURTON INTERNATIONAL SUPPLY S.L.**, by and through the undersigned counsel, and presents herewith its Reply to Defendants' Opposition to Plaintiff's Renewed Motion to Reopen Administratively Closed Case based on Significant Change in Circumstances, and states as follows:

### SIGNIFICANT BACKGROUND INFORMATION

From 2013 to 2016, PSI, PSBV, BARIVEN, PDVSA, through PDVSA SERVICES INC, Houston, Texas, awarded ASHBURTON various purchase orders ("PO's"), for the acquisition of tailor-made processing equipment for the crude oil refineries and oil and gas production facilities of entities of PDVSA in Venezuela. These orders were won during the course of several international competitive bidding processes.

The PO's are governed by the provisions and terms and conditions ("T&C's") for goods purchased as agreed between Ashburton International Supply and PSI, PSBV, BARIVEN, PDVSA. The T&C's are obligatory for all parties.

The Purchase Orders issued from PDVSA Services contain a list of instructions to the Seller for the delivery of goods which refers to the T&C's: Services Standard Terms and Conditions for goods PDVSA Services, and in accordance with the applicable terms. Prior to delivery, the goods are inspected by the PDVSA inspection agent.

The scope of responsibility of the deliveries has always been limited territorially to a USA forwarder agent, who receives the goods and issues a "well received certification," allowing Ashburton to submit PSI the corresponding invoice.

All the products specified in the PO were goods and services related to exploration and extraction activities of PDVSA in Venezuela. The products contracted were all delivered in the USA, as was established in the PO. All the technical and commercial requirements, including those in the Terms & Conditions (T&C's), were fulfilled by Ashburton. Not one objection or complaint has been received from PSI, PSBV, BARIVEN, PDVSA related to those goods.

Subsequent to delivery, Ashburton sent the corresponding invoices as established in the PO's. The conflict arose because PSI, PSBV, BARIVEN, PDVSA did not paid four (4) of those invoices.

The dispute arises out of PSI, PSBV, BARIVEN, PDVSA's failure to perform its contractual obligations, which is to pay the debt, consisting of the total principal amounts corresponding to the four (4) invoices that remain outstanding, the accrued interests until the payment is realized, and the associated costs of proceedings.

According to the T&C's the parties agreed to submit their disputes to the Courts of Texas.

It has always been Ashburton's desire to resolve this situation amicably.

In-fact, during November of 2016, the parties held meetings in the offices of PDVSA in the Hague, the Netherlands, to discuss the possibility of an amicable resolution, so as to avoid legal action.

Both parties signed a minute of meeting committing to resolve the dispute through agreeing a payment proposal, signed February 10, 2017, where PSI, PSBV, BARIVEN, PDVSA would pay what was due in four (4) installments and Ashburton would waive its right to claim interest and costs. PSI, PSBV, BARIVEN, PDVSA only partially honored this obligation.

On January 31st and March 10, 2017, PSI, PSBV, BARIVEN, PDVSA paid Ashburton several invoices for a total amount of US $1,625,612.32 pursuant to the Payment Proposal.

Four (4) invoices remained fully unpaid for a total of US $ 3,024,267.00

On June 21, 2017, Ashburton's Spanish Counsel met with PSI, PSBV, BARIVEN, PDVSA PSI, reminding them of the default, and advised them that the enforcement of the Payment Proposal was appropriate, and he therefore threatened to sue PSI, PSBV, BARIVEN, PDVSA in the absence of payment.

The debt was recognized by the Buyer on many occasions. Notably, on May 11, 2017 PSI, PSBV, BARIVEN, PDVSA acknowledged the debt on a written document that was mailed to Ashburton's auditors.

On November 20, 2018, Ashburton sent PSI, PSBV, BARIVEN, PDVSA a second notice of the debt due and demand for payment.

PSI, PSBV, BARIVEN, and PDVSA, never invoked any grounds under the applicable law and or the T&C's to avoid payment of the invoices. Quite to the contrary, the debts were recognized on many occasions, notably in the November 18, 2016 Minutes of Meeting signed by

3

both parties; in the February 10, 2017 Payment Proposal, and in the PDVSA/Bariven May 11, 2017 acknowledgement of the debt to Ashburton's auditors,

The dispute is not complicated. It merely relates to an international sale of goods, where Ashburton has delivered goods to Bariven and has not been paid for those goods. Simply put, the Buyer: PSI, PSBV, BARIVEN, PDVSA, has failed in its contractual obligations.

Ashburton claims are lawful and correct. Ashburton delivered the goods described in the referenced PO's accompanied with the documentation, and has not been paid for the sale of the goods. Further, the T& C's establish that the invoices were to be settled within thirty (30) days from their receipt by the Buyer.

Ashburton, the Seller, has the documentation proving without a doubt that the deliveries were in-fact made and all other documentation supporting its claim.

The Defendant's assertions to maintain the closure of this case to obtain documentation and a person with the most knowledge is solely an effort to avoid paying what is due. Ashburton has all the documentation related to the contract that was entered into in the United States and anything that may be in Venezuela is likely to be mere copies or duplicates of that documentation.

These goods were delivered 7 or 8 years ago, and considering the current situation in Venezuela, no cooperation would be expected from Venezuelan PDVSA or the government authorities to provide any answers. This should not be Ashburton's problem when it simply seeks to receive payment for the goods sold.

Certainly, sufficient information is available in the United States, such as material certifications, factory tests, Buyer´s inspection agent reports, Buyer´s forwarder reception notes, documentation that will clearly prove that the goods were delivered and the debt is authentic. On the other hand, the documentation from PSI, PSBV, BARIVEN, PDVSA, such as the minutes of

meetings, payment proposal, administration notes to Ashburton's external auditors confirming registration of the debt in their books, shows unequivocally that the deliveries and the debt exists.

## ARGUMENT

The overriding theme of Defendants' Opposition to Plaintiff's Renewed Motion to Reopen Administratively Closed Case based on Significant Change in Circumstances is that "the situation that led this Court to stay these proceedings and administratively close this case is still in place today: namely, the unlawful control exerted by the Maduro regime over the operations, assets, offices, and records of Petróleos de Venezuela, S.A. ("PDVSA") and Bariven, S.A. in Venezuela, and that "this unlawful control continues to prevent PDVSA, Bariven, and their counsel from accessing "the documents and personnel necessary for a proper defense of this case."

Most respectfully, it is essential that this Court revisit the situation presented in this case and reevaluate the basis upon which these proceedings were originally stayed and ultimately administratively closed.

In a nutshell, this case presents a situation where Defendants, Petróleos de Venezuela, S.A. ("PDVSA") and Bariven, S.A., entered into a contract with Plaintiff, whereby the Plaintiff was to manufacture certain custom made equipment to be utilized by Defendants in their petroleum production activities. Then the Defendants inspect the manufactured items and advise that the items are in-fact in accord with their specifications and they should be delivered to their freight forwarder in Houston for shipment to Venezuela. Next, the items are in-fact delivered to the freight forwarder as required by the contract, which at that point, completes performance by the Plaintiff pursuant to the contract. Subsequently, the Defendants fail to pay Plaintiff for the equipment manufactured and delivered in accord with the contract.

Even if one accepts, without conceding as a fact, that "the situation that led this Court to stay these proceedings and administratively close this case *is still in place*," one may ask, how is it that Defendants can enter into a contract for the manufacture and purchase of equipment, and then fail to pay, when the Venezuelan government "is still in place?" In other words, if they were able to enter into the contract while a certain governmental situation existed, how can they use that very same governmental situation as a shield to avoid payment for that which they have received? That is essentially what is occurring in this case, even if you take the Defendants' "still in place" assertion as correct.

Now we shall dig a little deeper into the Defendants' assertion that "the unlawful control exerted by the Maduro regime over the operations, assets, offices, and records of Petróleos de Venezuela, S.A. ("PDVSA") and Bariven, S.A. in Venezuela, "continues to prevent PDVSA, Bariven, and their counsel from accessing "the documents and personnel necessary for a proper defense of this case."" Specifically, if the "unlawful control exerted by the Maduro regime" was in place at the time the contract was entered into, and according to the Defendants, the same "unlawful control exerted by the Maduro regime" still exists, it certainly is not the Plaintiff's problem that now that the Defendants have breached the contract, they can hide behind the Maduro situation, and assert that it "continues to prevent PDVSA, Bariven, and their counsel from accessing "the documents and personnel necessary for a proper defense of this case.""

## **THE ARGUMENT OF THE DEFENDANTS IS DISINGENUOUS**

The argument put forth by the Defendants, that the fact that Maduro remains in power, this situation "continues to prevent PDVSA, Bariven, and their counsel from accessing "the documents and personnel necessary for a proper defense of this case," is disingenuous.

6

Specifically, there are numerous cases pending and/or recently resolved throughout the United States, wherein these same defendants are named, and in which they have proceeded to litigate the defense of those actions or engage in settlement negotiations, never raising any issue that because of the "unlawful control exerted by the Maduro regime, PDVSA, Bariven, and their counsel are prevented from accessing "the documents and personnel necessary for a proper defense" of those cases.  Further, it should be noted that substantially the same law firms that represent the Defendants in the case-at-bar, likewise represent those same Defendants in other cases around the United States. How can it be that those law firms can pick-and-chose which lawsuits they wish to litigate, merely by asserting that they are having difficulty in accessing documents and/or personnel?

**A sampling of those cases is set forth below:**

● ***Sulzer Chemtech USA, Inc. and Sulzer Turbo Services Houston, Inc., Plaintiffs***
   ***vs.***
   ***Bariven, S.A., PDVSA Services, Inc., and Petroleos De Venezuela, S.A., Defendants***

SDTX Case No. 4:21-CV-01533-DBT (Formerly LNH)

This case is presently pending in the United States District Court for the Southern District of Texas (Houston Division).

On June 3, 2021, the Court entered its order providing: "***On motion of the parties, this matter is hereby stayed for 120 days pending negotiations to seek a resolution of this matter***. The status quo of the proceedings and the rights, defenses, privileges and immunities of all parties are preserved for the duration of the stay and until such time as the Court rules otherwise. The parties shall file a status report on or before September 30, 2021." [D.E. 18] (Emphasis supplied.)

On September 30, 2021, the parties in that case filed their Joint Status Report providing in-part: "The parties ***met in good faith and believe that they may be able to reach an amicable resolution of this matter via continued settlement negotiations.*** As a result, the parties request that the Court extend the stay of the litigation for an additional 45 days." [D.E. 19].  (Emphasis supplied.)

On October 4, 2021, the Court entered its Order Continuing Stay, therein providing that the stay is continued until the Court lifts the stay, and that "By November 19, 2021, the parties must jointly report the status of the settlement.  ***If settlement is not reached, the parties must report concrete next steps to advance the litigation***." [D.E. 20]. (Emphasis supplied.)

7

On November 19, 2021, the parties in that case filed their Joint Status Report providing in-part: "***The parties have continued to meet in good faith and believe that they are approaching an amicable resolution of this matter. The parties have been working through several issues that require resolution before a settlement can be reached.*** As a result, the parties request that the Court continue the stay of the litigation for an additional 21 days, at which time the parties will update the Court as to their further progress. [D.E. 21] (Emphasis supplied.)

On November 22, 2021, the Court entered its order providing that by December 17, 2021, the parties must jointly report the status of the settlement and, ***if settlement is not reached, the parties must report concrete and detailed steps to advance the litigation***. [D.E. 22] (Emphasis supplied.)

Subsequently, beginning December 17, 2021 Joint Status Reports were filed by the parties asserting the following: "The parties have actively continued to meet in good faith and are pleased to report that they have reached agreement on a number of aspects of a potential settlement. ***The parties are actively continuing to negotiate the remaining terms in good faith and still believe they can reach a complete agreement in principle shortly***." [D.E. 23];

1/28/2022 "The parties have continued their negotiations regarding the ***last few remaining terms in good faith and are very close to a complete agreement in principle. Given the posture of the parties, execution of a final settlement agreement may be subject to regulatory approval***. [D.E. 25];

3/4/2022 "The parties have continued their negotiations regarding the ***last few remaining terms in good faith and remain close to a complete agreement in principle. Given the posture of the parties, execution of a final settlement agreement may be subject to regulatory approval***." [D.E. 27];

4/8/2022 "The parties have continued their negotiations and can report that ***they have reached an agreement in principle and are working to draft a written agreement setting forth the terms of the settlement.*** Additionally, as previously reported, given the posture of the parties, ***execution of the final settlement agreement may be subject to regulatory approval by the United States Department of the Treasury, Office of Foreign Assets Control ("OFAC").*** [D.E. 29];

10/7/2022 "The parties have continued their negotiations regarding the ***last few remaining terms in good faith and continue to have an agreement in principle in place that is subject to regulatory approval by the United States Department of the Treasury, Office of Foreign Assets Control ("OFAC").*** [D.E. 31];

2/3/2023 "***The parties have continued their dialogue in good faith but, given that the publication of the National Assembly's confirmation that the PDVSA Ad Hoc Board is still an entity devoted to the protection of PDVSA assets abroad is pending***, as well as ***recent developments and efforts in Venezuela toward open and free elections,*** the parties jointly request that the Court continue the stay of the litigation for ninety days until May 5, 2023, at which time the parties will update the Court as to their further progress." [D.E. 33], and

8

5/5/2023 "The parties require ***additional time to work through matters relating to regulatory approvals from the United States Department of the Treasury, Office of Foreign Assets Control.*** As a result, the parties jointly request that the Court continue the stay of the litigation until August 4, 2023, at which time the parties will update the Court as to their further progress.

It should be noted that not once did counsel for these Defendants ever raise an issue that because of the "unlawful control exerted by the Maduro regime, PDVSA, Bariven, and their counsel are prevented from accessing "the documents and personnel necessary for a proper defense" of that case. What makes this even more disingenuous is the fact that the same counsel represents the defendants in that case that represent the same Defendants in the case-at-bar.

● ***GPM Industrial, Inc. v. Petroleos De Venezuela, S.A.; Bariven, S.A. d/b/a Bariven Corp; and PDVSA Services, Inc.***

SDTX Case No. 16-CV-01129

On January 3, 2023, a Final Default Judgment was entered in the United States District Court for the Southern District of Texas (Houston Division) in the total amount of $6,108,986.88 against each defendant. [D.E. 98]

Again, not once did counsel for these Defendants ever raise an issue that because of the "unlawful control exerted by the Maduro regime, PDVSA, Bariven, and their counsel are prevented from accessing "the documents and personnel necessary for a proper defense" of that case.

● ***Impact Fluid Solutions LP F/K/A Impact Fluid Solutions LLC v. Bariven SA and PDVSA Services BV***

SDTX Case No. 4:19-CV-00652

On April 8, 2021, the Plaintiff filed a motion for summary judgment [D.E. 68], which was granted November 9, 2021. [D.E.84]

On December 15, 2021, a Final Judgment was entered in the United States District Court for the Southern District of Texas (Houston Division) in the total amount of $5,645,200.00 plus interest in the amount of $1,625,508.27. [D.E. 90]

Although, there was an agreed order staying this matter, the stay was allowed to expire after the passage of one hundred twenty (120) days. [D.E. 23/26/28]

● ***OI European Group B.V. v. Bolivarian Republic of Venezuela,…Petroleos de Venezuela, S.A.,***

Dist. Delaware Case No. 4:19-CV-00290 (LPS)

On October 4, 2022, the parties filed their Joint Status Report, which contemplates the case moving forward. [D.E. 74]

Not once did counsel for these Defendants ever raise an issue that because of the "unlawful control exerted by the Maduro regime, PDVSA, Bariven, and their counsel are prevented from accessing "the documents and personnel necessary for a proper defense" of that case.

● ***Isaac Industries, Inc. v. Petroquimica de Venezuela, S.A. et al***

SDFL Case No. 1:19-cv-23113-RNS

As recent as March 28, 2023 this case has proceeded to mediation. [D.E. 139]

Not once did counsel for these Defendants ever raise an issue that because of the "unlawful control exerted by the Maduro regime, the Defendant's counsel is prevented from accessing "the documents and personnel necessary for a proper defense" of that case.

**WHEREFORE**, Plaintiff, **ASHBURTON INTERNATIONAL SUPPLY S.L.**, again respectfully prays that this Honorable Court enter its Order granting the within Renewed Motion to Reopen Case, thereby permitting Plaintiff to pursue its claims against the Venezuelan Defendants.

Respectfully submitted,

**GEORGE J. VILA, P.A.**
George J. Vila, Esq.
(Florida Bar No. 141704)
201 Alhambra Circle, Suite 702
Coral Gables, FL 33134
Telephone: 305.445.2540
Email: gvila@gjvpa.com
(Counsel for the Plaintiff,
*Ashburton International Supply S.L.)*

***/s/ George J. Vila***
George J. Vila, Esq.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of May, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**GEORGE J. VILA, P.A.**
George J. Vila, Esq.
(Florida Bar No. 141704)
201 Alhambra Circle, Suite 702
Coral Gables, FL 33134
Telephone: 305.445.2540
E-mail: gvila@gjvpa.com
(Counsel for the Plaintiff,
*Ashburton International Supply S.L.*)

***/s/ George J. Vila***
George J. Vila, Esq.